## Robert Upton vs. The Salem Commercial Insurance Company

When insurance is made on a vessel to her port or ports of discharge, the voyage terminates at the port where the cargo is substantially discharged.

A vessel was insured at and from Salem to her port or ports of discharge in the river La Plata: All her cargo, except a few bundles of shingles, was discharged at Monte Video where she took on board merchandize intended for another vessel of the owner, then lying at Buenos Ayres, and proceeded to that port, where she was lost. *Held*, in a suit against the underwriters, that the assured was not entitled to recover, if the cargo was substantially discharged at Monte Video, and that it was for the jury to decide whether the cargo was so discharged

Assumpsit to recover for a total loss of the brig George, in·· sured by the defendants, by a policy dated September 13th 1841, at and from Salem to port or ports of discharge in the river La Plata.

It appeared, at the trial, that the brig was totally lost at Buenos Ayres, on the 17th of January 1842: That she took on board, at Salem, about 600 barrels of flour, about 80 bundles of shingles, and a quantity of lumber; that she discharged all the said flour and lumber, and 48 bundles of the shingles, at Monte Video, where she arrived on the· 20th of December 1841, and that there remained on board about 35 bundles, or 7½ thousands of the shingles; that the cargo was consigned to Alfred Peabody, who resided at Buenos Ayres, and was the agent of the plaintiff, and had the management of his affairs at that place and at Monte Video ; that the said Peabody was at Monte Video, three days after the arrival of the brig at that port, and had the management and direction of the sales and delivery of her cargo, and also of the destination of the brig, which was wholly under his orders: That while the brig was lying at Monte Video, there were laden on board about 5000 horns, and four passengers were taken on board to go to Buenos Ayres; that these horns were intended for another vessel of the plaintiff, (the King Philip,) then lying at Buenos Ayres.

The defence was, that the policy had expired, by reason of the brig's having passed her port or ports of discharge in the La Plata, before the loss happened ; and also, that there had

51 *

been a deviation, detention or delay, in the prosecution of the voyage, and that the risk was altered and increased, whereby the policy was discharged.

The defendants offered evidence tending to prove that the shingles remaining on board the brig, and which were taken in her from Monte Video to Buenos Ayres, were worth about $6 a thousand at Buenos Ayres, and that the cost of taking the brig from Monte Video to Buenos Ayres, would be about $150 or $200. The defendants then contended, and requested the court to instruct the jury, as follows · "1st. That unless they should find that the fact, that part of the outward cargo remained unsold at Monte Video, was the sole determining motive, inducement and purpose, of causing the brig to proceed from Monte Video to Buenos Ayres, and that she would, on account of that fact alone, have so proceeded onward, and without the concurrent influence of other motives, inducements and purposes — such as the intention to sell the brig, or procure other employment for her, or the like — then the voyage towards Buenos Ayres was not protected by the policy. 2d. That if the jury should find that the outward cargo had been substan tially discharged and landed at Monte Video, and that what remained was a very trifling and inconsiderable portion thereof, for value and bulk; and that the fact of such remnant remaining, and the desire and determination to sell the same at Buenos Ayres, did not form the main, principal and predominating inducement, purpose and motive, in causing the brig to proceed towards Buenos Ayres; and that the main, principal and predominating inducement, purpose and motive for so proceeding forward, was something distinct from and independent of the existence of such remnant of the outward cargo; then the voyage towards Buenos Ayres was not protected by the policy. 3d. That if the jury should find that the outward cargo had been substantially landed and discharged at Monte Video, and that what remained was a very trifling and inconsiderable part thereof, for value and bulk ; and that the fact of such remnant remaining, and the desire and determination to sell the same at Buenos Ayres did not form any definable and influencing part

of the inducement causing the brig to proceed towards Buenos Ayres; and that she would have so proceeded, had no such remnant existed, and for other objects and purposes; then the voyage towards Buenos Ayres was not protected by the policy. 4th. That if the jury should find that the brig was ready and in condition to receive a homeward cargo, or a cargo for an intermediate voyage, and did receive such an one, or part thereof; then the outward voyage terminated, and the voyage towards Buenos Ayres was not protected by the policy. 5th. That if the jury should find the facts aforesaid, and also that the procuring or taking in of any part of a homeward cargo, or intermediate cargo, or passengers homeward or for an intermediate voyage, caused any detention of the brig at Monte Video, or any increase of the risk; then she was not protected by the policy."

The court declined to instruct the jury as requested in the *first, second* and *fourth* points above, but ruled that the law was otherwise. On the *third* point, the court instructed the jury, that if the carrying of the shingles, that remained on board the brig, from Monte Video to Buenos Ayres, formed any part of the motive or inducement of Peabody, the agent, in ordering the brig to Buenos Ayres, then the jury should find for the plaintiff; otherwise, for the defendants; and that, on this point, the burden of proof was on the defendants.

On the *fifth* point, the court stated to the jury, that the question for them to consider was, whether the taking of the horns and passengers on board, (as above mentioned) caused any delay or detention; and if so, then, as to this point, the jury would find for the defendants; but if it caused no delay, then the jury would find for the plaintiff; and that, on this question, the burden of proof was on the defendants.

The case went to the jury on the *third* and *fifth* points.

The plaintiff introduced the depositions of the master and mate of the brig, for the purpose of showing the intention or motive of the plaintiff's agent, in ordering her to Buenos Ayres. (The view taken of the case, by the court, renders it unnecessary to state the contents of these depositions.) The defend

ants contended that the testimony of the master and mate was not competent evidence to prove the intention of the agent, which was the point in dispute; that their testimony was secondary evidence; that the instructions given by the plaintiff to the agent should have been produced, or have been shown by the testimony of the agent himself. But the court ruled, that the testimony of the master and mate was competent for the purpose for which it was introduced, and that the plaintiff was not bound to produce the agent or his testimony; that the agent's intention might be inferred by the jury from the testimony of the master and mate.

The jury returned a verdict for the plaintiff, subject to the opinion of the whole court on the above rulings and instructions.

*Perkins,* for the defendants. The policy related solely to the outward voyage; and the few shingles, that were left unsold at Monte Video, were too small a fraction of the cargo to constitute a motive for taking the brig to Buenos Ayres. The intention of all concerned was, to discharge and sell the whole cargo at Monte Video; and as that intention was substantially effected, the policy did not cover the further voyage to Buenos Ayres. *Inglis* v. *Vaux,* 3 Campb. 437. Emerigon, *c.* 13, § 18. 1 Phil. Ins. (2d ed.) 468. *Moore* v. *Taylor,* 1 Adolph. & Ellis, 25. *Richardson* v. *London Assurance Co.* 4 Campb. 94. *Brown* v. *Vigne,* 12 East, 283.

The matter of proof, on the *third* point, was peculiarly within the knowledge of the plaintiff; and when this fact is taken in connexion with the form of the issue put to the jury, it would seem that the burden of proof was on him. So, as to the cause of delay, &c. on the *fifth* point. Greenl. on Ev. § 74. The testimony of the master and mate, as to the agent's inducements and motives, should have been rejected as secondary evidence. Greenl. on Ev. § 82.

The ruling on the *fourth* point was erroneous. *Williamson* v. *Innes,* 1 M. & Rob. 88, and 8 Bing. 81, *note.* 1 Phil. Ins. (2d ed.) 467. If there had been a policy on the intermediate or homeward voyage, the horns put on board at Monte Video would have been covered by it.

*N. J. Lord & Ward*, for the plaintiff. The termination of the risk depends on the discharge of the cargo, in fact, and not on the intention of the assured. *Stocker* v. *Harris*, 3 Mass 416. *Lapham* v. *Atlas Ins. Co.* 24 Pick. 1. *Moffat* v. *Ward*, 4 Doug. 29, 31, *note.* 1 Phil. Ins. (2d ed.) 467.

The *first* and *second* instructions, which were requested by the defendants, were rightly refused. The sale of a remnant of a cargo is, in no case, the sole inducement to proceed further on a voyage ; nor is it even necessary that it should be the main, principal and predominating inducement. The suggestion of Lord Ellenborough, in the case cited from 3 Campb. 437, that the two objects, of disposing of a remnant of an outward cargo, and the procuring of a homeward cargo, cannot be mixed to gether, at the risk of underwriters, is inconsistent with the rights of masters and owners, in all voyages insured from port to port, or to various ports. The assured has a right to elect his port or ports of discharge, within the policy, and his motives, if not fraudulent, are not to be analyzed.

In *Moore* v. *Taylor*, 1 Adolph. & Ellis, 25, though the jury found that the whole outward cargo was, in effect, discharged, yet a majority of the judges thought the verdict was wrong.

As the brig was, *primâ facie*, within the policy, at the time of the loss, and as the affirmative was on the defendants, the burden of proof as to the influencing motive of the agent, delay, &c. was on them, as it would have been if the defence had been unseaworthiness.

The testimony of the master and mate was not secondary. There is no higher evidence. The agent's testimony would not have been higher. It does not appear that he had any orders on the point in question. The receiver of verbal orders may testify what those orders were, as well as the giver.

The opinion of the court was delivered at November term 1845.

Wilde, J. This is an action of assumpsit on a policy of insurance on the brig George, at and from Salem to port or ports of discharge in the river La Plata.

It was proved at the trial, that the brig proceeded on her

voyage, and arrived at Monte Video, where she discharged the greater part of her cargo ; but a small part thereof remaining unsold, namely, about thirty five bundles of shingles, the master concluded to take them to Buenos Ayres, where, as he testified. he had been informed that they would bring a good price, and that they could not be sold, at any price, at Monte Video. The brig accordingly proceeded, with the shingles on board, to Buenos Ayres, where she was totally lost. The general question is, whether the brig, at the time of the loss, was under the protection of the policy, or whether the voyage insured must be considered to have terminated at the port of Monte Video.

The defendants' counsel requested the court to instruct the jury, that unless they should find that the sole motive of causing the brig to proceed from Monte Video to Buenos Ayres was, to dispose of the part of the outward cargo remaining unsold at Monte Video, the brig, on her voyage from Monte Video to Buenos Ayres, was not protected by the policy. The court declined, and we think rightly, so to instruct the jury. If the brig was ordered to proceed to Buenos Ayres, for the purpose of discharging a substantial part of her outward cargo, it would be entirely immaterial that there were other concurring motives for the order. The evidence, that the brig was ordered to proceed to Buenos Ayres for other objects and purposes, might be material in determining the question whether she did or did not so ···oceed for the purpose of discharging a part of the cargo ; but in no other respect. On this point, it is immaterial whether the brig proceeded, on her voyage to Buenos Ayres, with the whole or a part only of her cargo on board. The risk continued until the arrival of the brig at her final port of discharge. That this is the true construction of the policy we cannot doubt ; and there is no authority to the contrary.

The defendants' counsel relies on the case of *Inglis* v. *Vaua*, 3 Campb. 437. But the decision in that case does not militate with the principle now laid down. In that case, the master dis posed of all his outward cargo at Martinique, except a smar quantity of lime and bricks, and with these he sailed for Anti gua, where he arrived ˃˥ the 31st of May ; and there the ship

lay till the 8th of July following. And the master testified that he stopped at Antigua, partly to dispose of the outward cargo, and partly to procure a homeward cargo. Lord Ellenborough decided that the captain had no right to mix together the two objects, of disposing of the remnant of the outward cargo, and procuring a homeward cargo, at the risk of the underwriters on the outward voyage; and that when the disposal of the outward cargo ceased to be the sole reason for his stay at Antigua, the underwriters were discharged. The ground of the decision was, that the master could not thus prolong the risk of the underwriters. For aught that appears in the report of the evidence, the remnant of the outward cargo might have been disposed of immediately on the arrival at Antigua, if the vessel had not been detained for the purpose of procuring a homeward cargo. On no other principle can the decision in that case be maintained. No such principle is involved in the present case. At the trial, there was no evidence or suggestion of any delay on the voyage from Monte Video to Buenos Ayres, or at the latter port. It was contended by the defendants' counsel, that the voyage was delayed by taking on board a number of horns and passengers at Monte Video; and the jury were instructed that, if they should so find, the underwriters would thereby be discharged from any further liability.

Another exception to the instructions given to the jury presents a question of greater difficulty. The court was requested to instruct the jury, that if they should find that the outward cargo had been substantially discharged at Monte Video; that what remained was a very trifling part thereof; and that to dispose of such remnant did not form any definable motive for causing the brig to proceed to Buenos Ayres; then that the voyage to tnat port was not protected by the policy. The court declined thus fully to instruct the jury, and instructed them that, if the carrying of the said remnant of the cargo formed any part of the motive for ordering the brig to proceed to Buenos Ayres, then they were to return a verdict for the plaintiff. On this question, we are all of opinion that the instructions to the jury were too much confined to a literal con-

truction of the policy, and that the case should have been left to the jury conformably to a more liberal construction. The case, we think, does not conclusively turn upon the motive of Peabody, the plaintiff's agent, in ordering the brig to proceed to Buenos Ayres. The more important question is, whether the outward cargo was discharged at Monte Video, within the true meaning of the policy. It is true that the whole cargo, in a literal and strict sense, was not discharged at that port ; but we think it should be left to the jury to decide whether the outward cargo was not substantially there discharged. It was so decided in the case of *Moore* v. *Taylor,* 1 Adolph. & Ellis, 25, a case very similar to the present. That was an action on a policy of insurance on a ship, at and from St. Vincent, Barbadoes, or any of the West India Islands, to her port or ports of discharge and loading in the United Kingdom, &c. ; and it was proved that the ship discharged all the cargo, except some coals and bricks, at Barbadoes, and was proceeding elsewhere, with said coals and bricks on board, for a fresh cargo, when she was totally lost in a hurricane. On this evidence, Lord Denman directed the jury to find for the defendant, if they thought that the cargo had been substantially discharged at Barbadoes. A verdict was returned for the defendant, and the whole court held that the direction to the jury was correct. They also refused to set aside the verdict as against the evidence, although some of the judges thought they should probably have arrived at a conclusion different from that of the jury. That case was ably discussed by the counsel for the assured, in support of a motion for a new trial, and was, we think, rightly decided. The same direction to the jury should be given in the present case ; for, on the point under consideration, the cases are not distinguishable. Too much stress, we think, has been laid on Peabody's motive or inducement for ordering the brig to proceed to Buenos Ayres. The material question is, whether the discharge of the cargo was substantially completed at Monte Video. If it was so discharged, we are of opinion that the voyage insured was thereby terminated, according to the true construction of the policy ; and that, when the brig proceeded to

Buenos Ayres, she was on a new voyage not protected by the policy. If all the outward cargo had been delivered at Monte Video, except a single bundle of shingles, the plaintiff's coun sel would hardly contend that the risk still continued on the voyage to Buenos Ayres. On the other hand, if a large part of the cargo was not discharged at Monte Video, but had been taken up the river to Buenos Ayres, the defendants probably would never have disputed their liability.

The main question therefore is, whether the cargo was sub- stantially discharged at Monte Video. This is a question en- tirely for the jury, and the burden of proof is on the defendants, as it was ruled to be at the trial. It is essential to the defence, that the jury should be satisfied that the cargo was substantially discharged before the loss ; else, by the terms of the policy, the defendants would be liable; and it is for the defendants to sat- isfy the jury of that fact. If they were not so satisfied, then, by the terms of the policy, the plaintiff was entitled to a verdict.

*New trial granted.*